IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CLAYTON J. MARTIN,

    **Plaintiff,**

    v.                                    CASE NO. 23-3063-JWL

BRIAN BELLENDIR, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Clayton J. Martin is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Finney County Jail in Garden City, Kansas ("FCJ"). The Court granted Plaintiff leave to proceed in forma pauperis. On March 6, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC"), granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 5). The Court's screening standards are set forth in the Court's MOSC.

Although Plaintiff is currently in custody at the FCJ, his claims arose during his detention at the Barton County Jail in Great Bend, Kansas ("BCJ"). Plaintiff alleges that on December 31, 2021, Sgt. Parks suspended Plaintiff's Kiosk privileges. (Doc. 5, at 2.) Plaintiff alleges that this denied him the right to file grievances, to order from the commissary, and to communicate with his family. *Id.* Plaintiff alleges that this constituted punishment, "seeing how [he] was not in

1

trouble and never received a D.R." *Id*. Plaintiff alleges that Sheriff Bellendir and Jail Administrator Doug Parks gave the orders to suspend Plaintiff's Kiosk privileges. *Id*.

Plaintiff acknowledges that he "refused to lock down on Dec. 31, 2021." *Id*. at 3. He claims that he "made [his] apologies to Cpl. Vonfelt, a Deputy Grant Smith, [and he doesn't] believe that these officers wanted to taze but they did at the same time." *Id*. Plaintiff claims he "complied and went to [his] cell after that." *Id*. Plaintiff claims this is the only incident he has had at the BCJ. *Id*.

Plaintiff claims that on January 11, 2022, Cpl. Jarrod Vonfelt came to Plaintiff's cell and informed him that he would not get his one hour out until further notice. *Id*. Plaintiff claims that he was on 24-hour lockdown from January 11 to January 24. *Id*. at 4. On January 25, he was placed back on 23 and one lockdown. *Id*.

Plaintiff claims that on February 11, 2022, Sgt. Parks denied Plaintiff's request for medical attention. *Id*. Plaintiff claims that on March 24, 2022, he was treated at the Hays Medical Emergency Room for constipation. *Id*. Plaintiff claims that although "constipation is not very serious . . . if untreated could lead to internal bleeding." *Id*.

Plaintiff claims cruel and unusual punishment in violation of the Eighth Amendment. *Id*. at 5. Plaintiff names as defendants:  Brian Bellendir, Barton County Sheriff; and Doug Parks, Barton County Deputy Sheriff. Plaintiff seeks compensatory damages in the amount of $5,000 each day for thirteen days of 24-hour lockdown, $1,000 each day for 56 days of 23/1 lockdown, and $100,000 for being denied medical attention. (Doc. 5, at 8.)

## II. DISCUSSION

### 1. Medical Care

Plaintiff's medical claim against Defendant Parks appears to be based on Parks' response

to Plaintiff's request form. Plaintiff attaches a request form dated February 11, 2022, in which Plaintiff alleges that he needs medical attention for stomach pain due to difficult bowl movements. (Doc. 5–1, at 5.) Parks' February 14, 2022 response indicates that they do not have a law library. *Id*. Plaintiff attaches another request form, also dated February 11, 2021, which states that it is Plaintiff's fourth request to go to the law library. *Id*. at 11. It appears that Parks' response was intended to correspond to the February 11 request regarding the law library.

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata*

*v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff has failed to show that his constipation was a serious medical need in February 2022. Plaintiff has failed to satisfy the objective prong.

Plaintiff also fails to satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Plaintiff claims Defendant Parks failed to properly respond to Plaintiff's request regarding medical care. It appears that Parks' response was intended for another grievance and Parks believed he was responding to Plaintiff's request for access to a law library. Plaintiff has failed to show that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. Plaintiff's claims suggest, at most, mere negligence. Claims under § 1983 may not be predicated on mere negligence. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

**2. Punishment**

The Fourteenth Amendment "prohibits *any* punishment" of a pretrial detainee without due process. *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (unpublished) (citing *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979) (holding that the government may subject a pretrial detainee to restrictions and conditions of confinement without triggering procedural due process so long as such measures don't amount to punishment)). " '[A] showing of an expressed intent to punish on the part of detention facility officials'—standing alone—is sufficient to demonstrate 'the disability is imposed for the purpose of punishment.'" *Id*. (citing *Bell*, 441 U.S. at 538; *see also Blackmon*,

4

734 F.3d at 1241).  Intentionally punishing a pretrial detainee by placing him on disciplinary status or in disciplinary segregation without giving him an opportunity to be heard violates his due process rights.  *Id*.

The Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained."  *Bell v. Wolfish*, 441 U.S. 520, 540 (1979).  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  *Id*.  "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment."  *Id*.  The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  *Id*. at 540, n.23 (citations omitted).

Plaintiff alleges that he was improperly punished when he was locked down without a disciplinary report and without knowledge as to why he was placed on lockdown status.  However, Plaintiff's attachments show he was aware of why he received a lockdown, and he was allowed an opportunity to be heard.  Plaintiff acknowledges that he was involved in an "incident" in which he threatened officers and refused to lockdown.  Plaintiff submits request forms in which he apologizes for the incident, stating that he has "been angry and I do realize that I've been angry with the wrong ppl.  I give my word and I'm giving it to you in writing as well.  I will not give out

5

no more threats or be rude to any officers in the [B]arton [C]ounty shierffs [sic] office.  I will be respectful." (Doc. 5–1, at 6.)  Plaintiff attaches another request form in which he apologizes and states that he "was out of line and I let emotions get the best of me." *Id.* at 8.

Plaintiff has not alleged that Defendants exaggerated their response when they locked him down after he became angry and made threats to officers.  Plaintiff has failed to allege that the restrictions are not reasonably related to the institution's interest in maintaining jail security.  Plaintiff should show good cause why his claim should not be dismissed

### 3. Access to the Kiosk

Plaintiff alleges that he was temporarily denied access to the kiosk at the BCJ.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system.  *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims regarding access to the kiosk are subject to dismissal for failure to state a claim.

### 4. Request for Relief

Plaintiff seeks compensatory damages in the amount of $5,000 per day and $1,000

per day. Any request for compensatory damages would be barred by 42 U.S.C. § 1997e(e), unless Plaintiff alleges a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Furthermore, as set forth in the MOSC, any request for injunctive relief would be moot because Plaintiff is no longer in custody at the BCJ.

**V. Response Required**

Plaintiff is required to show good cause why his Amended Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **April 24, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

Dated March 29, 2023, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
